JUAN SUÁREZ FUENTES, ETC., Plaintiffs and Appellees, v. SECRETARY OF THE TREASURY, Defendant and Appellant.

No. R-69-204.     Decided May 24, 1971.

*Gilberto Gierbolini, Solicitor General,* and *Américo Serra, Assistant Solicitor General,* for appellant. *Ramírez, Segal & Latimer* for appellees.

MR. JUSTICE RAMÍREZ BAGES delivered the opinion of the Court.

Is the 50% of the rent yielded by a building bought by two brothers considered taxable income of a partnership constituted by said two brothers in view of the contract executed between them with their mother which provided that the latter would undertake the administration of said prop-

erty and would receive 50% of the rent for said service? We conclude that it is.

The facts which give rise to the controversy in this case are the following:

By deed No. 9 of September 15, 1949, entitled "Conveyance of Rents", executed before notary Víctor A. Coll, the brothers Juan and José Suárez Fuentes, owners of a lot and building known as Ocean Walk Apts., next to the grounds of the former Parque Borinquen, in the Condado, San Juan, P.R., property which they acquired on March 13, 1946, Mrs. Encarnación Fuentes assumed the administration of said property for a term of 20 years, under the agreement that she was going to keep, as payment for such services, the 50% of the net total of the liquid balance of the rents of said building being under the obligation to deliver to the Suárez Fuentes brothers the amount of the other half.

In March 1966 complaints were filed against the Secretary of the Treasury by each one of said brothers and two by the partnership they had, requesting that the deficiencies for the years 1956 to 1960 be cancelled, deficiencies amounting to:

| | |
|---|---|
| Juan Suárez Fuentes | $ 6,723.28 |
| Partnership of Juan and José Suárez Fuentes | 14,506.24 |
| José Suárez Fuentes | 5,991.41 |
| Partnership of Juan and José Suárez Fuentes | 14,906.24 |

In his answer, appellant, the Secretary of the Treasury, alleged that the majority of said deficiencies are attributable to the benefits distributed by the aforementioned partnership the existence of which was computed according to the provisions of § 411 (a) (3) of the Income Tax Act of 1954.

According to the minutes of the hearing held on March 16, 1967, the parties stipulated, that: "the partnership will be granted a deduction for the amount of $204.34 for 1956 and

the Secretary of the Treasury will grant a deduction to the partnership, that is, that it would deduct from the income attributed to the partners as benefits from the partnership the amounts which would be imposed upon the partnership for income tax as a result of the instant action."

In its determination, the trial court concluded that the Suárez Fuentes brothers had constituted a partnership for the taxable years in question which operated the building Ocean Walk Apartments; that said property was acquired by said brothers, with a $50,000 loan which their mother Encarnación Fuentes gave them, loan which does not pay any interest whatsoever; that said loan was made under the consideration that the appellee brothers would give to their mother the administration of the aforementioned building through the payment of 50% of the rents yielded by said property according to the above-mentioned deed of "Conveyance of Rents" executed years before the deficiencies in dispute were determined; that the trial court in another action upheld the aforementioned contract of administration for which reason the employment of Carola Nadal by Encarnación Fuentes should prevail in order to assist the latter through payment in the aforementioned administration; that during the years in question Encarnación Fuentes was active and alert and she kept an adequate administration of the building.

The trial court made the following conclusions of law, among others, that: (1) the contract contained in the aforementioned deed No. 9 was legal and it bound the parties to its faithful fulfilment; (2) during the tax years in question the aforementioned contract was in force and Encarnación Fuentes fully fulfilled her part of the contract; (3) the payment of 50% of the rents of the building to Encarnación was a legal expense of the business of operations of the building.

By virtue thereof, the trial court rendered judgment, among other things, setting aside the deficiencies insofar as

they proceed from appellant's refusal to accept as deductible the salaries paid to Encarnación Fuentes by the partnership of the Suárez Fuentes brothers, during the tax years in question; that the appellant "shall deduct from the income attributable to the partners by way of profits resulting from the partnership the amounts which as a result of this judgment said partnership is bound to pay as deficiencies in its income tax."

On reconsideration, the trial court clarified that:

". . . it comes forth from the evidence in the trier's mind that in the actions taken there was no purpose of using any method or subterfuge to deviate the tax impact towards another source which had not yielded the income. And in effect, the income was distributed as it appeared in the income tax return. There has not been any income acquired in the name of another person. This conviction arises from several factors, which we detail:

"a) the complete transaction was carried out ante litem motam, before the filing of the suit;

"b) it had not been decided yet that the business of the Suárez Fuentes brothers was a partnership;

"c) at that time there was a tremendous enmity between both brothers. (See to that effect the letter of Introduction of the investigation of the returns of 1956 executed by the Secretary, annexed therein, paragraphs 1st and 8th.)

"d) the powers of the administration under the administration contract were litigated and the legality thereof questioned;

"e) the return of the administratrix informed the income coming from those rents every year, until an inspector of defendant told her that she did not have to do it. (See the handwritten letter of the administratrix annexed to the 1959 return, addressed to defendant, which reads: 'I want to set forth that during 1959 I *received* $5,086.99 for the administration of the building Ocean Walk Apts. but according *to the information given to me by the inspector* who investigated me until 1958, that income is not taxable for me.') [Italics in the original.]

"We want to add to this that in the investigation and in the administrative stage the defendant handled this as a 'gift'. In

contraposition it cannot be a gift when the origin of the acquisition of the building was made possible through a $50,000 loan which the mother made to her sons and which did not draw any kind of interest. The amount received from the contract for the conveyance of rents exceeded by a small margin the commercial credit for that type of loan.

"If the contract was not simulated and it was not done for the purpose of evading taxes, nor to charge income on someone who did not receive it, even when its final result has been lower taxes, that, by itself, does not render it void. The contract had sufficient cause between the parties, it was enforced, and as such, it binds the parties, and therefore, the Secretary."

In support of his petition for review appellant assigns that the trial court erred in holding that the services rendered by Encarnación Fuentes deserved the payment of 50% of the building's rents; the amount of said payment was reasonable and a necessary and ordinary expense of the operation of the business; that Encarnación performed the services for which she was supposedly paid. Also, he assigns that it erred in considering and applying provisions of the Civil Code to a controversy dealing with tax law; in interpreting the contract; as well as in analyzing the evidence and in cancelling the deficiencies.

At the threshold we must point out an established fact which the trial court failed to consider. It arises from the testimony of José Suárez Fuentes. This testimony reveals that when the Suárez Fuentes brothers had the opportunity of buying the building Ocean Walk Apartments, and since they did not have enough money, their mother, Encarnación Fuentes, lend them $50,000 "with the condition that we had to give the administration of the building and half of the rents to her." The court gave credit to this part of the testimony despite the fact that the loan in question was necessarily made in 1946, when the property was acquired, and it was not until three years later, on September 15, 1949, when the brothers agreed that Encarnación Fuentes would assume the

administration of the property as payment of which 50% of the rent would be given to her. However, the trial court apparently did not give any credit to that part of said witness' testimony which immediately following the foregoing statement said that she did not collect interest from that loan because "it was a family loan . . . she recovered it from the building's rents . . ."

Juan Suárez Fuentes testified that since 1946, when he and his brother bought the property in question, his father, Marcial Suárez, administered the property until 1949 when he became disabled; that then the deed of conveyance of rents was executed, under which Encarnación Fuentes assumed said administration. This testimony does not reveal the conditions under which Marcial Suárez administered the property. The deed in question does not mention in any manner said administration. It does not recognize either any credit of rents paid or withheld by Marcial Suárez as remuneration for his services as administrator or as credit to the loan which Encarnación Fuentes made to her sons, appellees herein, presumably in 1946, for the purpose of buying then the property in question. Even more, said deed does not state in any manner that the administration of the property and the 50% of the rent is conveyed to Encarnación Fuentes as a condition of a loan she made to her two sons three and a half years before.

Although the trial court concluded that "what was received by way of the contract for the conveyance of rents exceeded by a small margin the commercial credit for that type of loan", it is no less true that Mrs. Nadal, who in effect performed the greatest part of the administrative functions of the property in question, was paid only 7% of the rents collected. To those effects Mrs. Nadal testified that she collected the rents of the property, she was in charge of the repairs, she carried the employees and materials in her automobile; she made the purchase orders; that if some repair

was needed and the tenant complained to Encarnación Fuentes, the latter told him "Mrs. Nadal is the one in charge of that and she makes the decisions."

On the other hand, the evidence shows that Encarnación Fuentes was 79 years old when she assumed the administration of the property, she was half blind, she had "difficulties when she walked" and "she could not take a car and go to the hardware store, and carry her employees back and forth." The qualification or experience said lady had to justify the conveyance of the administration of the property through the payment of 50% of the rents does not appear from the evidence either.

There was no evidence showing that the payment of 50% of the rent in this case was a just and reasonable compensation, in accordance with the amount collected for such services by those persons or firms engaged in the administration of real estate. The only thing which appears is the observation of the trial court to the effect that "what was received by way of the contract for the conveyance of rents exceeded by a small margin the commercial credit for that type of loan", measure which, in our opinion, is not the correct and adequate one to determine the reasonability of said compensation.

In *West India Machinery* v. *Sec. of the Treasury*, 89 P.R.R. 113, 122, 123 (1963), we summarized the rules connected with the deduction for salaries or other compensation for actually rendered professional services provided by § 32 (d) (1) of the Income Tax Act of 1954 (13 L.P.R.A. § 3023 (a) (1) (A) ); *Clínica Juliá* v. *Sec. of the Treasury*, 76 P.R.R. 476, 495, 496 (1954); *Buscaglia, Treas.* v. *Tax Court*, 70 P.R.R. 545 (1949); *Alonso Sobrino Hermanos* v. *Tax Court*, 66 P.R.R. 841 (1947); *Buscaglia, Treas.* v. *Tax Court*, 67 P.R.R. 548, 550 (1947); *Sobrinos de Izquierdo, Inc.* v. *Sancho Bonet, Treas.*, 56 P.R.R. 173 (1940). See, also, Mertens, Law

of Federal Income Taxation, §§ 25.63, 25.65, 25.68, 25.69, 25.70, 25.71, and 25.72.

■ Since in *Buscaglia, supra,* we held that the interest paid between relatives is not deductible, in the case at bar the circumstances seem to show that through the contract of conveyance of rents in question they sought to obviate the impediment established by the statute and the rule of *Buscaglia, supra.*

■ The evidence adduced does not support the reasonableness of the compensation. It seems rather to indicate that it is excessive in view of the qualifications or lack of qualifications of the alleged administratrix and the fact that the principal functions of the administration were performed by another person through a compensation of only 7% of the rent.

To support such compensation a stronger and more convincing evidence than that presented was necessary, in view of the close family relations existing between the alleged administratrix and the owners of the property, appellees herein.

The evidence, moreover, tends to support the conclusion that the contract for the conveyance of rents was executed as a means for Encarnación Fuentes to collect the family loan without interest which she gave to her sons to facilitate their acquisition of the building Ocean Walk Apartments.

■ We also conclude, that the trial court erred in basing its determination to cancel the deficiencies in question, for the most part, on the fact that the provisions of the aforementioned contract of conveyance of rents were conclusive. Repeatedly we have held that we must resort to the Income Tax Act and not to the Civil Code in order to decide the problems of the parties' tax liabilities, because that is the particular statute on the matter. *Rexach* v. *Sec. of the Treasury,* 96 P.R.R. 890, 894 (1969) ; *Pizá* v. *Sec. of the Treasury,* 86 P.R.R. 200, 203 (1962) ; *Albanese* v. *Secretary of the*

*Treasury*, 76 P.R.R. 302, 307 (1954); *Semanaz* v. *Sec. of the Treasury*, 76 P.R.R. 385, 390 (1954); *González* v. *Secretary of the Treasury*, 75 P.R.R. 864, 869 (1954); *Wood* v. *Tax Court*, 71 P.R.R. 216 (1950).

Notwithstanding the foregoing, the truth is that during the years in controversy the property has been administered by one or more persons extraneous to appellees and that at least 7% of the rents has been paid as compensation for such services, expenses which are clearly deductible.

Therefore, the judgment of the trial court should be reversed and the case remanded so that the deficiencies determined by appellant be modified in harmony with what we have previously set forth.